UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X
                                                                         :
UNITED STATES OF AMERICA                                                 :
                                                                         :
        - v. -                                                           :
                                                                         :       13 Cr. 029 (RA)
ARTHUR DUNN,                                                             :
                                                                         :
                        Defendant.                                       :
                                                                         :
                                                                         :
------------------------------------------------------------------------ X

# GOVERNMENT'S SENTENCING MEMORANDUM

                                                        PREET BHARARA
                                                        United States Attorney for the
                                                        Southern District of New York
                                                        One St. Andrew's Plaza
                                                        New York, New York 10007

Carolina A. Fornos
Assistant United States Attorney
- Of Counsel -



U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

November 1, 2013

**VIA ELECTRONIC MAIL AND ECF**

The Honorable Ronnie Abrams
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

> Re: **United States v. Arthur Dunn**,
> 13 Cr. 029 (RA)

Dear Judge Abrams:

      The Government respectfully submits this memorandum in advance of the sentencing of Arthur Dunn (the "defendant"), scheduled for 10:30 a.m. on Friday, November 8, 2013, and in response to the defendant's sentencing submission dated October 25, 2013 ("Def. Mem."). For the reasons stated below, the Government respectfully submits that a sentence within the defendant's Stipulated Guidelines Range of 12 to 18 months' imprisonment as set forth in the plea agreement is appropriate in order to reflect the seriousness of the crime and particularly to promote specific deterrence as well as general deterrence to the public at large.

### Preliminary Statement

      The defendant was charged with fraudulently obtaining Social Security Disability Insurance ("SSDI") benefits in violation of Title 18, United States Code, Section 641, from at least January 2006 through September 2011, because he falsely certified that he was disabled and unable to work to the Social Security Disability Administration while, at the same time, he was actively employed at the Fashion Institute of Technology as an assistant coordinator of the Center for Professional Studies.

      Between January 2006 and October 2011, the defendant collected approximately $82,985 in disability payments which were directly deposited into his checking account at Bank of America. For the same time period, 114 paychecks were deposited from FIT into the same checking account – often within days of his disability payments – well in excess of $200,000 in wages.

      But this is only half of the defendant's offense conduct. The defendant began receiving SSDI benefits in 1998, after certifying that he was disabled and unable to work. And

Hon. Ronnie Abrams
November 1, 2013
Page 2

FIT employment records reveal that he began working at FIT, part-time, in <u>1997</u>.  Despite having a Bachelor's Degree in Fashion Merchandise Management, and working since 1997, he repeatedly falsely certified to Social Security Disability Administration that he was disabled and unable to work.  Because his earnings would have disqualified him from any SSDI benefits, the defendant received a total of $170,544.40 in disability payments between March 1998 and August 2011 to which he was not entitled.

The fraud here was extensive, deliberate, and thus, a Guidelines Sentence is proper.[1]

### The Defendant's Conduct Calls for a Sentence
### Within the Guidelines Range As Set Forth in the Plea Agreement

The defendant submits that probation is proper in this case – a dramatic variance from the Guidelines – because of the defendant's difficult family history and lifelong struggle with mental illness (bipolar disorder).  (Def. Mem at 1).  As set forth below, the Government strongly disagrees that probation is proper in this case.

First, a sentence of no imprisonment neither provides just punishment for the offense in this case nor affords adequate deterrence to criminal conduct.  In total, for more than a decade, the defendant stole more than $170,000 from the United States.  The defendant, although claiming mental illness, held a steady job for that same decade.  He deliberately and in a calculating manner, decided to accept those disability payments every month while – within days – receiving his payroll check from FIT.  The theft of Government benefits is a very serious crime that is, unfortunately, rampant and must be deterred.  If the only punishment for the crime – whether in the context of housing fraud, social security disability fraud, food stamps fraud, etc. –

---

[1] The Government notes that the Guidelines Range is based on the amount of the loss to the Government, which at the time of the plea was calculated to be approximately $154,614.20, and thus, between $120,000 and $200,000.  Although the defendant was charged in the Indictment with theft of government funds between January 2006 and September 2011, the theft of government funds from 1998 through 2005 (and the corresponding loss amount of $87,559.40) is appropriately considered as relevant conduct in determining the Guidelines range.  *See United States v. Silkowski*, 32 F.3d 682, 687 (1994) ("The Guidelines expressly provide for consideration of 'relevant conduct' in determining the base offense level applicable in a case where the conduct is 'part of the same course of conduct or common scheme or plan as the offense of conviction.'").  As part of the plea agreement, the defendant agreed to forfeit $154,614.20, which was the amount that the Government had been able to calculate at the time of the plea.  Further review of records dating back to 1998 confirms that the actual loss to the Government is $170,544.40.  With respect to forfeiture, however, the Government will seek only the agreed upon amount – $154,614.20 – and not the entire $170,544.40 in losses.  With respect to restitution, the plea agreement provided that restitution should be set in an amount specified by the Court.  The Government submits that the proper restitution amount is limited to $82,985 (the same amount as the Garnishment Order) because the $82,985 is the loss to the Government directly linked to the offense – meaning the loss to the Government between January 2006 and September 2011.  *See Silkowski*, 32 F.3d at 689 (concluding that "the district court could only order restitution for losses that [the defendant] either expressly agreed to or directly caused by the conduct composing the offense of conviction.").  Therefore, restitution in this case is properly in the amount of $82,985 to the victim in this case: Social Security Administration, Debt Management Section, ATTN: Court Refund, PO Box 2861, Philadelphia, PA 19122.

Hon. Ronnie Abrams
November 1, 2013
Page 3

is forfeiture of the fraud proceeds, then there truly is no deterrence whatsoever for the crime. A message must be sent that if an individual fraudulently benefits from Government funds, the consequences will be prison.

Second, a sentence of probation does not adequately reflect the seriousness of the offense in this case. The defendant engaged in this fraud for more than ten years. He received in excess of $170,000 – in benefits that could have gone to a deserving person. The only excuse provided by the defendant is that he had a difficult family history and that he is bipolar. A lot of people have a difficult family history. And not everyone decides to commit crimes. Having a difficult childhood is no excuse for criminal conduct. Nor is leniency warranted because of his medical diagnosis when he has been able to work continuously at the same place of employment for 15 years. The Government further notes that it does not credit any assertion that the reason for the fraud was based on the defendant's struggle with the deaths of his parents in 2006. The facts show otherwise: the defendant began this fraud in 1998 – about 8 years before the deaths of his parents.

In sum, given the seriousness of the offense, the willful and deliberate nature of the offense, a period of incarceration is appropriate. More specifically, a sentence as set forth in the plea agreement would "promote respect for the law," "provide just punishment for the offense," and "afford adequate deterrence to criminal conduct." *See* 18 U.S.C. § 3553(a)(2)(A-B).

### Conclusion

For the reasons set forth herein, the Government submits that a sentence within the range of 12 to 18 months' imprisonment is sufficient but not greater than necessary to promote purposes of sentencing.

Respectfully submitted,

PREET BHARARA
United States Attorney

By: /s/ Carolina A. Fornos
    Carolina A. Fornos
    Assistant United States Attorney
    Southern District of New York
    (212) 637-2740

**Via E-mail and ECF**
cc:    Annalisa Miron, Esq.